# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CLARA KATZ,

        Plaintiff,

                                            Case No. 15-10405

v.                                      HON. TERRENCE G. BERG

SAFECO INSURANCE COMPANY OF
AMERICA,

        Defendant.

                                                  /

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. 12) AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 11)

In August 2014, a record flood hit the Detroit area and damaged Plaintiff Clara Katz's home. During the cleanup and remediation effort, asbestos was released, further damaging her personal property and home. Plaintiff sought and received coverage for flood damages, but is also seeking coverage for the asbestos-related damages under a home insurance policy she obtained from Defendant Safeco Insurance Company of America ("Safeco"). Because Safeco disagrees that this loss is covered under the policy, Plaintiff filed this lawsuit on December 22, 2014. (Dkt. 1, Ex. A). Presently before the Court are the parties' cross-motions for summary judgment. For the reasons explained below, Plaintiff's motion for summary judgment (Dkt. 12) is **DENIED** and Safeco's motion for summary judgment (Dkt. 11) is **GRANTED**.

I. **FACTUAL AND PROCEDURAL HISTORY**

Plaintiff resides at 25115 Ridge Cliff Drive in Southfield, Michigan. (Complaint, Dkt. 1, Ex. A, p. 1). On November 10, 2013, Plaintiff obtained a year-long home insurance policy from Safeco, policy number OK6067898, that ran from November 10, 2013 to November 10, 2014. (Dkt. 12, Ex. 1).

In August 2014, heavy rains hit the Metro Detroit area and led to a discharge of water from a sump pump or sump well into Plaintiff's basement. (Dkt. 12, p. 1). Plaintiff claims that the water badly damaged her home and its contents. (Dkt. 1, Ex. A, p. 2). On August 11, 2014, Plaintiff filed a claim with Safeco for damages caused by the water discharge (the "water and sewer damage" claim). (Dkt. 14, p. 3). Safeco determined that Plaintiff was entitled to recover insurance proceeds under the insurance policy's "escape of water from a sump" coverage and paid Plaintiff $25,000—the full policy limit under this coverage. (Dkt. 12, Ex. A). In addition, Safeco paid Plaintiff five percent of the $25,000 limit ($1,250) according to the policy's additional coverage for debris removal. (*Id.*)

Plaintiff then hired non-party ServPro to clean up the water and to remediate the damage to her home. (Dkt. 1, Ex. A, p. 2). During the cleanup, ServPro tore out a tile floor that allegedly contained asbestos. (*Id.*) Plaintiff contends that ServPro did not check for the presence of asbestos prior to removing the tile, and did not have authorization to remove the tile; Plaintiff maintains that these actions violated local, state, and federal laws. (*Id.*) Plaintiff claims that the removal of the tile floor caused the asbestos to become airborne, posing a hazard to her health and

2

damaging her personal property and home. (*Id.* at pp. 2-4) ("the claim of KATZ [sic] for the Asbestos damages . . . is applicable relative to the structure and content.").

Plaintiff subsequently contacted Safeco to report a new and separate claim for asbestos damage. (*Id.* at p. 3). In November 2014, Safeco verbally informed Plaintiff's public adjuster, Howard Tkatch, that it considered Plaintiff's asbestos claim to be a part of her water and sewer damage claim, for which it had already paid Plaintiff the $25,000 policy limit. (Safeco's Notice of Declination of Coverage, March 16, 2015, Dkt. 11, Ex. B, p. 2).

On December 22, 2014, Plaintiff filed suit against Safeco in the Oakland County Circuit Court[1] raising a single breach of contract count. Safeco timely removed the suit to this Court on January 30, 2015 based on diversity jurisdiction. (Dkt. 1). On May 1, 2015, the parties filed cross-motions for summary judgment. Following full briefing, the Court held oral argument on November 10, 2015.

## II.  ANALYSIS

### A. Standard of Review

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty*

---

[1] Case No. 2014-144711-CB.

*Lobby, Inc.*, 477 U.S. 242, 249 (1986).  On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

"As the moving parties, the defendants have the initial burden to show that there is an absence of evidence to support [plaintiff's] case." *Selhv v. Caruso*, 734 F.3d 554 (6th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party "'may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.'" *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir.2009)).  In this case, both parties are moving for summary judgment and bear the burden to show there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.

## B. Discussion

"In this action arising under federal diversity jurisdiction, we apply the substantive law of Michigan, as the forum state." *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2012).  The first issue that Plaintiff raises is whether Safeco has waived its defenses under the insurance policy.  "In Michigan, there is a general rule that denial of liability under an insurance policy on specified grounds constitutes a waiver of other defenses." *Provident Life & Acc. Ins. Co. v.*

4

*Adie*, 176 F.R.D. 246, 249 (E.D. Mich. 1997).  In *Provident Life*, the court declined to apply the general rule where the defendant raised the defenses in its answer and, in so doing, provided the plaintiff with notice of these defenses at an early stage of the litigation.  *Id.*  Similarly, here there are no grounds to find that Safeco waived its defenses under the insurance policy as it raised them in its answer to Plaintiff's complaint.  Plaintiff was on notice of these defenses and had the opportunity to address them in her pleadings.  The Court will thus consider whether Safeco is bound to pay for Plaintiff's losses under the insurance policy.

Under Michigan law, insurance contracts are interpreted according to the traditional rules of contract interpretation.  *McGrath v. Allstate Ins. Co.*, 290 Mich. App. 434, 439 (2010).  "The proper interpretation of a contract is a question of law."  *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 47 (2003).  "[T]he primary goal of contract interpretation is to ascertain and effectuate the intent of the contracting parties."  *City of Grosse Pointe Park v. Michigan Mun. Liab. & Prop. Pool*, 473 Mich. 188, 218 (2005).  Courts read insurance contracts as a whole and must "give effect to every word, clause, and phrase."  *Id.*

"When interpreting insurance contracts, the Court must first determine if the policy language is ambiguous."  *Triple Inv. Grp., L.L.C. v. Hartford Steam Boiler Inspection & Ins. Co.*, 71 F. Supp. 3d 733, 738 (E.D. Mich. 2014).  "An insurance contract is ambiguous if provisions are subject to more than one meaning."  *McGrath*, 290 Mich. App. at 439.  "Ambiguities in the policy are construed against

5

the insurer, who is the drafter of the contract." *Singer v. Am. States Ins.*, 245 Mich. App. 370, 374 (2001).

If a court finds the policy language clear and unambiguous, it "must enforce the specific language of the contract." *McGrath*, 290 Mich. App. at 439. "The language of the contract is to be given its ordinary, plain meaning and technical, constrained constructions should be avoided." *Singer*, 245 Mich. App. at 374.

"A generally recognized principle of insurance law is that the burden of proof lies with the insured to show that the policy covered the damage suffered." *Pioneer State Mut. Ins. Co. v. Dells*, 301 Mich. App. 368, 378 (2013) (quoting *Solomon v. Royal Maccabees Life Ins. Co.*, 243 Mich. App. 375, 379 (2000)). "While the burden of proving coverage is on the insured, it is incumbent on the insurer to prove that an exclusion to coverage is applicable." *Id.* Although courts construe insurance exclusion clauses strictly and narrowly, they must "enforce clear and unambiguous exclusions in insurance policies." *Realcomp II, Ltd. v. Ace Am. Ins. Co.*, 46 F. Supp. 3d 736, 741 (E.D. Mich. 2014).

Plaintiff asserts that the asbestos claim is a separate and distinct claim from her water and sewer damage claim because ServPro was not responding to the flood damage when it tore out the tile floor, exposing the harmful asbestos. Her principal argument is that the insurance policy's Building Ordinance or Law Coverage—an additional policy coverage under the policy—encompasses her asbestos claim. This coverage states in full:

> **7. Building Ordinance or Law Coverage.** We will pay for damage to **Building Property We Cover** resulting from a covered cause of loss in compliance with any ordinance or law that regulates the construction, repair or demolition of the property.
>
> This coverage does not apply unless you choose to repair or rebuild your property at its present location.
>
> We do not cover:
> a.  the loss in value to any covered building or other structure due to the requirements of any ordinance or law; or
> b.  the costs to comply with any ordinance which requires any *insured* or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, *pollutants or contaminants.* However, for purposes of **Building Ordinance or Law Coverage,** *pollutants or contaminants* shall not include asbestos or materials containing asbestos or lead.
>
> You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated above.
>
> The limit of liability shown in your Policy Declarations is the most we will pay for the total of all loss or costs for **Building Property We Cover,** regardless of the number of locations or number of claims made.
>
> This is an additional amount of insurance.

(Additional Property Coverages, Dkt. 17, Ex. A, p. 8; Michigan Special Provisions, Dkt. 17, Ex. A, p. 1) (emphasis in original). Plaintiff seeks coverage for damages to her personal property and home. The Court will address each type of damage in turn.

### 1. Plaintiff's personal property losses

As a threshold matter, the Building Ordinance or Law Coverage does not cover Plaintiff's damaged personal property because it only extends to "building property we cover." The policy defines "building property we cover" to include the Plaintiff's dwelling and attached structures. (Property Coverages, Dkt. 17, Ex. A, p. 1). Personal property is not included in "building property we cover," and is therefore not covered under the Building Ordinance or Law Coverage.

Plaintiff also argues that her personal property losses should be covered under Coverage C, which does govern personal property. However, Coverage C does not cover personal property losses that are "caused directly or indirectly by any of the Building Property Losses We Do Not Cover." (Coverage C, Dkt. 17, Ex. A, p. 4). Section I of the policy states that it covers building property losses caused by "accidental direct physical loss to property . . . except as limited or excluded." The policy excludes building property losses due to pollution or contamination. It states, in relevant part:

> **7. Pollution or Contamination,** meaning the existence of or the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission, or absorption of ***pollutants or contaminants*** at any time except as provided by **Additional Property Coverages—Household Products Coverage** under **Section I— Property Coverages.**

(*Id.* at p. 2) (emphasis in original). In its definitions section, the policy defines "pollutants or contaminants" to include "asbestos or any materials containing asbestos[.]" (Definition 3(k)(3), Dkt. 17, Ex. A, p. 23). Because the policy explicitly

8

declines to provide coverage for building property losses due the asbestos, Plaintiff cannot recover for any asbestos-related damage to her personal property under Coverage C.

## 2. Plaintiff's building property losses

The Court next turns to whether Plaintiff is entitled to coverage for building property losses under the Building Ordinance or Law Coverage. The Building Ordinance or Law Coverage provides coverage for (1) "damage to Building Property We Cover," (2) "resulting from a covered cause of loss," (3) "in compliance with any ordinance or law that regulates the construction, repair or demolition of the property."[2] (Additional Property Coverages, Dkt. 17, Ex. A, p. 8). Plaintiff meets the first element insofar as she is claiming damage to her personal residence.

The next requirement for this coverage is that the damage to Plaintiff's residence must be "resulting from a covered cause of loss." Only certain losses are "covered" under the policy, however. For example, the policy expressly excludes building property losses caused directly or indirectly by pollutants or contaminants. The policy defines the term pollutant or contaminant to include asbestos—meaning that damage to building property caused directly by asbestos contamination is not a

---

[2] In general, building law and ordinance provisions provide coverage for "government-mandated requirements. In most cases, these will be statutes or regulations enacted by a state or the federal government or ordinances adopted at the city or local level." Scott G. Johnson, *Insurance Coverage for Building Code Upgrades*, 44 Tort Trial & Ins. Prac. L.J. 1031, 1036 (2009). Following the Court's request for supplemental briefing, Plaintiff provided evidence of at least two laws regulating the repair and construction of structures that contain asbestos, including a regulation from the Occupational Safety and Health Administration ("OSHA") under 29 C.F.R. § 1926.1101(a)(3), and the Michigan Asbestos Abatement Contractors Licensing Act under Mich. Comp. Laws § 338.3101 et. seq.

covered cause of loss. (*See* Exclusion Number 7 under "Building Property Losses We Do Not Cover," Dkt. 17, Ex. A, at p. 2).

Plaintiff relies on language in the Building Ordinance or Law Coverage contained in the "Additional Property Coverages" section of the policy to argue that asbestos contamination is in fact a covered cause of loss, but this reliance is misplaced. The portion of the Building Ordinance or Law Coverage that Plaintiff point to provides as follows:

> We do not cover:
>
> b. the costs to comply with any ordinance which requires any ***insured*** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, ***pollutants or contaminants.*** However, for purposes of **Building Ordinance or Law Coverage,** ***pollutants or contaminants*** shall not include asbestos or materials containing asbestos.

(Michigan Special Provisions, Dkt. 17, Ex. A, p. 1) (emphasis in original). This provision removes asbestos and lead from the definition of pollutants or contaminants "for purposes of Building Ordinance or Law Coverage[.]" The purpose of the Building Ordinance or Law Coverage is to cover costs incurred in complying with laws or ordinances that regulate "the repair or construction of a building." Johnson, *Insurance Coverage for Building Code Upgrades*, 44 Tort Trial & Ins. Prac. L.J. at 1036. The key phrase in the Building Ordinance or Law Coverage that defeats Plaintiff's claim that it provides coverage for her asbestos clean-up efforts is the limiting language "resulting from a covered cause of loss."

The Building Ordinance or Law Coverage only applies to asbestos clean-up required by law if the damage at issue results from a covered cause of loss. The release of asbestos contaminants, of itself, is expressly excluded—that is, it is specifically defined as *not* a covered cause of loss—under the "Building Property Losses We Do Not Cover" Section. (Exclusion 7, Dkt. 17, Ex. A, p. 2). Here, the damage was caused by ServPro removing asbestos tile, it was not caused by the sump pump overflow, which was a covered loss. While Plaintiff may argue that the tile removal was made necessary by the discharge from the sump pump, the policy excludes losses caused by pollutants or contaminants "regardless of any other cause or event contributing concurrently or in any sequence to the loss." (Personal Property Losses We Do Not Cover, Dkt. 17, Ex. A, p. 7).

Plaintiff's interpretation is also in conflict with other provisions of the policy. Courts read insurance contracts as a whole and must "give effect to every word, clause, and phrase." *City of Grosse Pointe Park*, 473 Mich. at 218. As an additional property coverage, the Building Ordinance or Law Coverage is "subject to all the terms, provisions, exclusions, and conditions of this policy." This includes the policy's express exclusion of asbestos damages.

As stated, under "Building Property Losses We Do Not Cover," the policy specifically excludes losses caused directly or indirectly by the "discharge, dispersal, seepage, migration, release, escape, emission, transmission, absorption of pollutants or contaminants" which the policy defines to include asbestos. (Exclusion 7, Dkt. 17, Ex. A, p. 2; Definition 3(k)(3), Dkt. 17, Ex. A, p. 23). Plaintiff insists that this

11

claim is a separate and distinct claim from her sump pump discharge claim, and seeks to recover damages to her home caused by the dispersal of asbestos following ServPro's removal of the tile flooring. These are precisely the type of losses that the policy intends to exclude.

The Court is also mindful that it must not hold Safeco liable for "a risk that it did not assume." *Henderson v. State Farm Fire & Cas. Co.*, 460 Mich. 348, 354 (1999). Here, the policy clearly states that asbestos contamination damages are not a covered cause of loss. The terms of the Building Ordinance or Law Coverage do not eliminate this exclusion; it merely states that it will extend coverage for costs incurred in complying with asbestos-related ordinances where Plaintiff's building property suffers asbestos contamination damage that results from a covered cause of loss.

At oral argument and in its pleadings, Plaintiff clarified that her asbestos claim is independent from its water and sewer damage claim because ServPro was not responding to the flood damage when it tore out her tile floor. (*See* Cross-Motions for Summary Judgment Hearing Transcript, Dkt. 23, 20:2-24:25) (stating that removal of floor was a separate and distinct act from repair of water damage). Given Plaintiff's position, the Court holds that she is not entitled to recover damages under the Building Ordinance or Law Coverage. In summary, because the Building Ordinance or Law Coverage requires that damages result from a covered cause of loss, and Plaintiff's asbestos claim is not a covered cause of loss, Plaintiff is not entitled to recover damages under this provision.

### 3. Plaintiff's entitlement to coverage under other provisions

In addition to the Building Ordinance or Law Coverage, Plaintiff claims that she is entitled to recover damages under Coverage D and the additional Household Products Coverage. Coverage D provides coverage for additional living expenses and loss of rent. It states:

> 1. If a loss covered under this Section makes that part of the *residence premises* where you reside uninhabitable we cover **Additional Living Expense**, meaning the necessary increase in living expenses you incur so that your household can maintain its normal standard of living.

(Coverage D, Dkt. 17, Ex. A, p. 9) (emphasis in original). This provision is unavailing because it conditions coverage on a "loss covered under this Section." As explained above, the policy explicitly excludes coverage for asbestos contamination damages. Therefore, Plaintiff is not entitled to recover under Coverage D.

Nor can Plaintiff recover under the additional Household Products Coverage, which provides:

> We cover direct physical loss to the property described in Coverages A and B arising out of a discharge, dispersal, spill, leak, release, escape, emission, transmission or absorption of household products . . . For purposes of this coverage, **household products do not include materials containing asbestos**, lead or formaldehyde.

(Additional Property Coverages, Dkt. 17, Ex. A, p. 9) (emphasis added). Because the plain language of this provision excludes materials containing asbestos, Plaintiff is also not entitled to coverage under this provision.

In sum, Plaintiff has not shown that her asbestos claim is entitled to coverage under any provision of the insurance policy, while Defendant has shown that it is not. The record contains no genuine issue of material fact because the parties do not contest the underlying facts. The Court finds that the terms of the policy do not cover the type of claim Plaintiff is making. Consequently, Defendant is entitled to summary judgment, while Plaintiff's motion for summary judgment must be denied.

### III. CONCLUSION

For the reasons explained above, Defendant's motion for summary judgment is **GRANTED** and Plaintiff's motion for summary judgment is **DENIED**.

Let judgment be entered accordingly.

**SO ORDERED.**

Dated: March 23, 2016   s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on March 23, 2016, using the CM/ECF system, which will send notification to all parties.

s/A. Chubb
Case Manager

14